# In the United States Court of Federal Claims

No. 15-885C
(Filed: July 22, 2016)

* * * * * * * * * * * * * * * * * * * * * * * * * * *

NOVA GROUP/TUTOR-SALIBA, A Joint
Venture,

                 Plaintiff,

            v.

THE UNITED STATES,

                Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * * * *

Contract Disputes Act, 41 U.S.C. § 7101 et seq; Transfer; Time Limit for Appealing Contracting Officer's Decision; Time-Barred Appeal; Waiver of Sovereign Immunity.

Gerald Scott Walters and Steven L. Reed, Smith Currie & Hancock, LLP, 2700 Marquis One Tower, 245 Peachtree Center Avenue, NE, Atlanta, GA 30303, for Plaintiff.

Benjamin C. Mizer, Robert E. Kirschman, Jr., Steven J. Gillingham, and Adam E. Lyons, United States Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

---

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO TRANSFER

---

**WILLIAMS**, Judge.

On May 31, 2016, Plaintiff filed an unopposed motion to transfer the above-captioned case to the Armed Services Board of Contract Appeals ("ASBCA") pursuant to 41 U.S.C. § 7107(d). Plaintiff represents that it presently has an appeal pending before the ASBCA arising under the same contract at issue in this action. Because the claim pending in this Court would be time-barred at the ASBCA and the claim pending in this Court involves wholly different facts than the ASBCA claim, Plaintiff's motion to transfer is denied.

## Background

On May 2, 2008, the Naval Facilities Engineering Command ("NAVFAC") awarded Contract No. N44255-08-C-6000 for the design and construction of a ship repair wharf ("Pier B") at the Puget Sound Navy Shipyard in Bremerton, Washington to Plaintiff, Nova Group/Tutor-Saliba. Nova Group/Tutor-Saliba v. United States, 125 Fed. Cl. 469, 470 (2016). Although NAVFAC approved Plaintiff's design submissions on November 12, 2009, the project's construction manager later questioned Plaintiff's design on March 8, 2010. Id. In

response to the construction manager's letter raising this design issue, Plaintiff stopped construction and began a re-evaluation of the design, which lasted from March 8 until May 27, 2010.  Id. at 471.  As part of this re-evaluation, Plaintiff's architect-engineer and designer of record, KPFF Consulting ("KPFF"), hired an independent third-party designer, Ben C. Gerwick, Inc. ("Gerwick"), to analyze KPFF's original design.  Id.  Gerwick concluded that KPFF's design complied with the requirements of the contract and that KPFF had chosen an appropriate design method.  Id.  Plaintiff resumed construction on May 27, 2010.  Id.  Upon resuming construction, Plaintiff accelerated the remaining work, increasing manpower, equipment, and overtime.  Id.

Two Requests for Equitable Adjustment ("REA") are implicated in the instant motion - - REAs 9 and 14.  In REA 14, the subject of the suit in this Court, Plaintiff seeks compensation for the work stoppage and acceleration stemming from the design re-evaluation in 2010.  Plaintiff stated:

> The Government issued Serial No. 0106, dated March 8, 2010 advising of Berger ABAM's concerns that the final approved design may not be in conformance with the RFP . . . .  The concern that the design was not in conformance with the RFP required all work on Pier B to be stopped until these issues were resolved.  This delay impacted all Pier B work for several months and has required NTS to accelerate the falsework operation to mitigate the delay to the construction schedule.

Compl. Ex. 3, at 3.

In REA 9, the subject of the appeal before the ASBCA, Plaintiff raises a differing site condition claim, stating:

> REA #9 was assigned to differentiate the pile driving [Differing Site Condition] and related issues between the Mole, REA #5 and Pier B.  After completion of the pile driving at the Mole Quay-wall, [American Civil Contractors], our pile driving subcontractor moved to the adjacent Pier B footprint and experienced the same or similar pile related problems at Pier B that it experienced at the Mole structure including inability to drive to design tip elevation and alignment issues, all caused by unknown subsurface conditions.  Our design engineer attempted to mitigate the issue by modifying the driving criteria, just as Berger/ABAM did at the Mole.  In both cases the criteria did not mitigate the uneven and variable elevations that would typically have been identified by the Indicator Pile Program.  The extra scope of work includes the same elements as REA #5 but also includes additional scope including: engineering review and design changes, falsework modifications for bump-outs, reinforcing detailing and material changes, installation of 29 additional piles and CIP crossbeams.  This work is ongoing and all associated cost and schedule impacts are being compiled for inclusion into the REA.

Id. at 2.  The contracting officer issued a final decision denying REA 14 on September 4, 2014, and a final decision denying REA 9 on August 12, 2015.  Pl.'s Mot. 3-4.

Plaintiff filed its complaint in this Court on August 17, 2015, appealing the contracting officer's final decision denying REA 14. On October 16, 2015, Defendant filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief could be granted, arguing that Plaintiff failed to give timely written notice of its claim for constructive changes. The Court denied Defendant's motion on March 16, 2016, finding that Plaintiff's failure to timely provide written notice did not require dismissal of its complaint, as Plaintiff plausibly alleged that Defendant had actual knowledge of Plaintiff's work stoppage and acceleration. Nova Group, 125 Fed. Cl. at 474. In the meantime, on November 4, 2015, Plaintiff appealed the contracting officer's denial of REA 9 to the ASBCA.

On April 6, 2016, Defendant filed an unopposed motion to stay this action solely based on Plaintiff's representation that it was considering requesting a transfer to the ASBCA. On April 15, 2016, Plaintiff filed a status report indicating that it was still assessing whether to file a motion to transfer. On May 31, 2016, Plaintiff filed the instant motion to transfer, representing that Defendant did not oppose a transfer.

## Discussion

Plaintiff seeks to transfer the instant case to the ASBCA, or, in the alternative, to transfer the case currently pending before the ASBCA to this Court.

Plaintiff avers that because it did not timely file an appeal regarding REA 14 with the Board, the ASBCA would not have jurisdiction over that appeal.[1] Pl.'s Mot. 6-7 ("NTS had the right to but did not timely file a Notice of Appeal with the ASBCA after receiving the CO's final decision denying NTS's claim on REA 14. As such, the Board cannot now exercise jurisdiction over a direct appeal since NTS failed to file an appeal within 90 days of the CO's decision.") (internal citations omitted). Nonetheless, Plaintiff argues that this Court can bestow "derivative jurisdiction" upon the ASBCA via a transfer, invoking Section 7107(d) of the Contract Disputes Act ("CDA"). That provision states:

> If 2 or more actions arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of the parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of the actions in that court or transfer any actions to or among the agency boards involved.

41 U.S.C. § 7107(d) (2012). While the referenced provision authorizes transfer, it does not speak to the propriety of transferring a case that would be time-barred.

---

[1]    The Contract Disputes Act requires that appeals to the Board be filed within 90 days of receiving a contracting officer's final decision. Section 7104 states that a "contractor, within 90 days from the date of receipt of a contracting officer's decision . . . may appeal the decision to an agency board . . ." or may appeal directly to the Court of Federal Claims "within 12 months from the date of receipt of a contracting officer's decision . . . ." 41 U.S.C. § 7104(a), (b)(3) (2012). Plaintiff filed its appeal regarding REA 14 with this Court 11 months after the contracting officer issued her final decision.

Plaintiff argues that the Federal Circuit's decision in <u>Glenn v. United States</u>, 858 F.2d 1577 (Fed. Cir. 1988), would permit transfer to the Board even though that claim would be time-barred at the Board.  In <u>Glenn</u>, the contracting officer issued a liability decision which Glenn appealed to the ASBCA.  The contracting officer subsequently issued a quantum decision, which Glenn appealed to the Claims Court, as he was outside of the 90-day time limit to file with the ASBCA.  Glenn sought transfer from the Claims Court to the ASBCA, but the trial court denied Glenn's motion, finding that a failure to appeal the contracting officer's final decision on quantum within the 90-day deadline could not be cured by a transfer from the court to the board. <u>Id.</u> at 1578-79.  The Federal Circuit disagreed, finding that because the quantum decision "supplemented" the liability decision, the ASBCA had jurisdiction over both appeals, despite Glenn's failure to appeal the quantum decision within 90 days. <u>Id.</u> at 1581.

The Federal Circuit in <u>Glenn</u> articulated a narrowly circumscribed rule permitting transfer to a forum where a supplement to a claim would be time-barred - - not the broad rule Plaintiff attempts to construct here - - and emphasized the sui generis quality of <u>Glenn</u>.  The Court stated: "the <u>unique circumstances</u> of this case require that the Claims Court's order be vacated and the case be remanded to the Claims Court with instructions to transfer Glenn's appeal to the board, for consolidation with the appeal pending before that tribunal." <u>Id.</u> (emphasis added).  The Court continued that even if the ASBCA determined that the quantum decision did not supplement the liability decision, it "should nonetheless, in <u>this particular and unusual case</u>, consolidate the two appeals" in order to "avoid the necessity of two tribunals concurrently deciding appeals on interrelated issues and the possibility of inconsistent decisions." <u>Id.</u> (emphasis added).  In <u>Glenn</u>, the quantum decision involved the same factual circumstances as the liability decision and was a continuation of the liability decision, and permitting adjudication of these two actions in different fora posed a risk of conflicting decisions.  Plaintiff is asking this Court to interpret <u>Glenn</u>, a "unique" and "unusual" case in a manner that would greatly broaden its narrow holding and permit Plaintiff to circumvent the statute of limitations governing appeals to the boards of contract appeals.

Plaintiff suggests that the unusual outcome in <u>Glenn</u> would justify consolidating a differing site condition claim with a wholly separate acceleration claim stemming from a work stoppage due to a design re-evaluation.  The claim before the Board - - REA 9 - - is not a continuation of REA 14, as was the case in <u>Glenn</u>, but rather is an entirely separate claim, based upon different occurrences, at a different time, seeking different relief.  Unlike in <u>Glenn</u>, there is no risk of inconsistent decisions here if the tribunals were to grant one appeal and deny the other, as the claims do not involve the same facts or legal issues.  In the claim underlying this action, REA 14, Plaintiff seeks a $1,881,900 price adjustment due to the re-evaluation of Pier B's pile design and the subsequent acceleration of construction activities due to the work stoppage that occurred during the March 8 to May 27, 2010 re-evaluation period.  Pl.'s Mot. 3-4.  In REA 9, a differing site condition claim pending at the ASBCA, Plaintiff seeks a $10,498,284.85 price adjustment for additional costs incurred in the design modification and construction of a subset of Pier B's piles, due to an unexpected subsurface condition in the ground contour of the site. Pl.'s Mot. Ex. 2.  Because the differing site condition claim at the Board involves wholly separate factual and legal issues than the work stoppage claim pending at the Court, <u>Glenn</u> is distinguishable and does not warrant transfer.

The main impediment to transfer, however, is that this procedural tack would permit Plaintiff to pursue its work stoppage claim in a forum where that claim would be time-barred. Plaintiff contends that this Court has the authority to transfer this action even though it would have been time-barred at the Board. In so arguing, Plaintiff presumes that the 90-day time limit for filing at the Board is not jurisdictional. But that presumption may not be accurate, as the Federal Circuit has expressly reserved ruling on whether or not the filing deadline in the CDA is jurisdictional. See Guardian Angels Med. Serv. Dogs, Inc. v. United States, 809 F.3d 1244, 1252 (Fed. Cir. 2016) (stating that the court need not "decide whether compliance with the twelve-month filing period set out in section 7104(b)(3) is a jurisdictional requirement").[2]

It would not be prudent for this Court to transfer a case to a forum which might lack jurisdiction. In the event the CDA's filing deadline is ultimately determined to be jurisdictional, transferring could have a deleterious effect as the Board would lack jurisdiction over the transferred claim and its decision would be a nullity. See Schmittling v. Dep't of Army, 219 F.3d 1332, 1337 (Fed. Cir. 2000) (stating that if a Board lacks jurisdiction, it "is without authority to decide the issues presented" and that without jurisdiction, "the Board's decision on the merits of a petition is a nullity"); Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (Fed. Cir. 1988) (stating that an "untimely appeal to the board is an absolute nullity because the board lacks jurisdiction over such an appeal"); Cosmic Constr. Co. v. United States, 697 F.2d 1389, 1390 (Fed. Cir. 1982) (finding that the 90-day deadline for a contractor to

---

[2]      In Guardian Angels Medical Service Dogs, Inc., the court noted that the Supreme Court recently stated that filing deadlines are ordinarily not jurisdictional, citing Sebelius v. Auburn Regional Medical Center, 133 S. Ct. 817, 825 (2013), United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1632 (2015), and Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 439-42 (2011). 809 F.3d 1244, 1252 (Fed. Cir. 2016). The statute at issue in Auburn Regional Medical Center, 42 U.S.C. § 1395$oo$(a)(3), states that a health care provider "may obtain a hearing" by the Provider Reimbursement Review Board regarding reimbursement for services provided to Medicare beneficiaries so long as the request is made within 180 days of a final determination by government contractors known as fiscal intermediaries. Auburn Reg'l Med. Ctr., 133 S. Ct. at 824. The Court held that the provision "does not speak in jurisdictional terms," and that Congress' choice of language did not reveal "a design to preclude any regulatory extension." Id. (internal citation and quotation marks omitted). Kwai Fun Wong involved the statute of limitations for bringing a claim in district court under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), and stated that in "enacting the FTCA, Congress . . . provided no clear statement indicating that § 2401(b) is the rare statute of limitations that can deprive a court of jurisdiction." 135 S. Ct. at 1629, 1632. Finally, Henderson addressed 38 U.S.C. § 7266(a), which states that a veteran appealing a denial by the Board of Veterans' Appeals must do so within 120 days of the mailing of the Board's final decision. 562 U.S. at 433-34. The Henderson Court held that this deadline "does not have jurisdictional attributes," as there was no evidence of Congressional intent that the "provision was meant to carry jurisdictional consequences." Id. at 441. The court also noted its holding in Sikorsky Aircraft Corp. v. United States, which stated that the six-year statute of limitations in Section 7103 of the CDA "does not create a jurisdictional bar" because it "does not have any special characteristic that would warrant making an exception to the general rule that filing deadlines are not jurisdictional." Guardian Angels Med. Serv. Dogs, Inc., 809 F.3d at 1252 (internal citation and quotation marks omitted).

appeal a contracting officer's final decision is "part of a statute waiving sovereign immunity, which must be strictly construed, and which defines the jurisdiction of the tribunal, here the [ASBCA]") (internal citations omitted); Gregory Lumber Co. v. United States, 229 Ct. Cl. 762, 763 (1982) (finding that Congress set a 12-month limit for a contractor to appeal a contracting officer's final decision in this Court, thus "this court cannot and should not read into it exceptions and tolling provisions Congress did not contemplate or authorize") (internal citation omitted); Jacobs Eng'g Grp., Inc. v. United States, 75 Fed. Cl. 752, 760 n.9 (2007); States Roofing Corp. v. United States, 70 Fed Cl. 299, 300 (2006) (stating that the 90-day period for appealing to the Board is a jurisdictional limitation that may not be waived); Olsberg Excavating Co. v. United States, 3 Cl. Ct. 249, 252 (1983).[3]

Finally, the practical reason Plaintiff constructs to support transfer is not persuasive. Plaintiff argues that the appeal proceeding before the ASBCA, filed two and a half months after this suit, and spawning no published decision, "has progressed further" than the lawsuit proceeding before this Court. Pl.'s Mot. 15 (stating that the appeal pending before the ASBCA "is proceeding at a much faster clip," as Plaintiff has already filed its complaint in that appeal, Defendant has submitted its Rule 4 submission and answer to the complaint, written discovery has been served by both parties, and fact discovery is anticipated to close by November 30, 2016); see Nova Group, 125 Fed. Cl. at 474. Even accepting Plaintiff's suggestion that its Board appeal is farther along than this action, that circumstance is wholly due to Plaintiff's own procedural tacks in both fora.[4] Plaintiff represented that it wished to stay proceedings in this Court in order to determine whether it would seek to transfer this matter to the ASBCA. See Def.'s Mot. to Stay 1; Pl.'s Status Report 1. Although Defendant ultimately requested the stay on April 6, 2016, because it had a filing deadline, the sole reason supporting the request was Plaintiff's deliberations over whether it would seek a transfer. Def.'s Mot. to Stay 1. Written discovery completed at the Board can be used in this proceeding as appropriate.

In short, the procedural posture of these matters especially at this early stage should not be used to effect an end run around a filing deadline that may be jurisdictional. In any event, the alternative relief Plaintiff requested can achieve Plaintiff's goal of resolving these appeals in a single forum. As such, the Court grants Plaintiff's alternative request to transfer the ASBCA case to this Court where there is no timeliness issue.

---

[3]    Plaintiff also relies on Southwest Marine, Inc. on Behalf of Universal Painting & Sandblasting Corp. v. United States, 680 F. Supp. 327 (N.D. Cal. 1988), decided nine months before Glenn. In Universal Painting, the plaintiff sought transfer to the ASBCA of a case that would have been time-barred before the Board. The district court permitted transfer, interpreting the CDA to allow transfer of "any" case, not only those filed within 90 days. The district court noted that neither party was able to provide either a court or Board decision resolving the question of whether a Board could accept a transfer of a time-barred case. Universal Painting is not binding, and this Court declines to adopt its rationale in light of Guardian Angels Medical Service Dogs, Inc., Cosmic Construction and its progeny, and the uncertainty surrounding whether the CDA's 90-day and 12-month filing deadlines are jurisdictional.

[4]    The same counsel represents Plaintiff at the ASBCA and in this action.

## Conclusion

Plaintiff's motion to transfer the instant action to the Armed Services Board of Contract Appeals is **DENIED**, and Plaintiff's alternative request to transfer the ASBCA appeal to this Court is **GRANTED**.

Pursuant to 41 U.S.C. § 7107(d), Plaintiff's pending appeal before the ASBCA, No. 60312, shall be transferred to this Court and consolidated with Plaintiff's claim pending before this Court in the above-captioned case.  The Clerk shall serve a copy of this order on the Acting Chairman of the ASBCA.

The Court will convene a telephonic status conference on **September 15, 2016**, at **11:00 a.m. E.D.T.**  The Court will initiate the call.


s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**